RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
ALEXANDRIA, LOUISIANA
DATE 2/6/08
BY JDB

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| HAROLD SIMMONS | CIVIL ACTION NO. 07-1653 |
| VS. | SECTION P |
| TIM WILKINSON, WARDEN | JUDGE DRELL |
| | MAGISTRATE JUDGE KIRK |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

Before the court is petitioner Harold Simmons's *pro se* petition for writ of *habeas corpus* (28 U.S.C. §2254) filed on October 2, 2007. Simmons is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is incarcerated at the Winn Correctional Center. He claims that he is in custody in violation of the Constitution of the United States because the Louisiana Board of Parole denied him the right to counsel and then revoked his parole following a parole revocation hearing convened on June 3, 2004.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the petition be **DENIED** and **DISMISSED WITH PREJUDICE** as either time-barred by the provisions of 28 U.S.C. §2244(d) or pursuant to the procedural default doctrine.

*Statement of the Case*

On November 14, 2007, the undersigned authored a Report recommending dismissal of the *habeas* petition as time-barred by the provisions of 28 U.S.C. §2244(d) and, alternatively, on the merits since petitioner had neither plead nor established that his complained of custody was in violation of the Constitution and laws of the United States. [see doc. 4][1]

On November 27, 2007 petitioner filed an objection to the Report and Recommendation. Therein petitioner reiterated his claim that his current incarceration was in violation of the United States Constitution and the Constitution of the State of Louisiana "... because the Louisiana Board of Parole denied him the right to counsel under the provisions of Louisiana Revised Statute 15:574.9(A)..." [doc. 5, p. 2] Petitioner confirmed that his parole was revoked (or "violated") on June 3, 2004 and "...on September 12 2007, scheduled for review by the Parole Board..."

---

[1] The undersigned noted that the pleadings and exhibits provided little background information. However, based on the petition and exhibits, the undersigned was able to conclude that petitioner had been convicted of a sex offense and had been released on parole sometime prior to May, 2004. He was provided Notice of Preliminary Hearing by his parole officer in May 2004. The Notice informed petitioner that he was in violation of two conditions of parole; it was alleged that he (1) failed to report to the parole officer, and (2) failed to register as a sex offender. **The undersigned further concluded that** on June 3, 2004 petitioner was brought before the Parole Board for a revocation hearing. According to petitioner, he requested that counsel be appointed to represent him at the hearing but his request was denied and his parole was revoked resulting in his current incarceration. The undersigned further noted that petitioner did not seek review of the parole revocation in the Louisiana courts; however, he did apply for a rehearing before the Parole Board in September 2007.

He implied that relief was denied at the September 12, 2007 proceeding and this somehow "tolled the one-year statute of limitations." In support of this theory he referred to an otherwise unidentified case entitled "McCall v. Kelly D. Ward." [doc. 5, p. 4] Finally, petitioner alleged that the Report and Recommendation asked the court "... to 'wink' misleading by the state of Louisiana using the AEDPA's one year statute of limitations denying him due process of law and equal protection..." [doc. 5, pp. 4-5]

Based on the foregoing, the Court refused to adopt the Report and Recommendation and remanded the matter to the undersigned "... for further consideration and determination whether, on the merits, and on the issue of timeliness, this application should be denied..." [doc. 6]

Thereafter, on January 17, 2008, petitioner submitted a pleading entitled "Application for Certificate of Appealability." In that pleading, petitioner averred that he was seeking a Certificate of Appealability (COA) pursuant to 28 U.S.C. §2253(c)(1). [doc. 7] However, since final judgment has not been rendered in this case, petitioner was notified that his pleading would be filed as a Supplemental Objection to the Report and Recommendation. [doc. 8]

In this supplemental pleading, petitioner provided some additional facts. He claimed that he was originally sentenced on

August 20, 1990 in the First Judicial District Court, Caddo Parish. According to petitioner he was not notified by the sentencing court or his parole officer that he was required to register as a sex offender.

He further argued that since the parole revocation proceeding was not criminal in nature, that his current petition is not subject to the AEDPA's timeliness provisions. Finally, he also argued that the claim was "... based upon new reliable evidence..."; however, he provided no such evidence for review. [doc. 7]

### Law and Analysis

The matter has been reconsidered as ordered. The undersigned has again reviewed the original petition and exhibits; further, the undersigned has considered petitioner's objections, including the supplemental pleading filed on January 17, 2008. Nevertheless, the undersigned must again conclude that the petition is time-barred for the reasons provided in the original Report and Recommendation [See doc. 4] and the additional reasons that follow:

### 1. Limitations

As noted in the original Report and Recommendation, this petition was filed after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Therefore, the court must apply the provisions of AEDPA, including the

timeliness provisions. <u>Villegas v. Johnson</u>, 184 F.3d 467, 468 (5th Cir. 8/9/1999); <u>In Re Smith</u>, 142 F.3d 832, 834, citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Title 28 U.S.C. §2244(d) was amended by AEDPA to provide a one-year statute of limitations for the filing of applications for writ of *habeas corpus* by persons such as petitioner, who are in custody pursuant to the judgment of a State court.

In the Supplemental Objection filed on January 17, 2008, petitioner argued that the AEDPA limitations period did not apply because "Petitioner did not receive a new criminal charge nor was counsel appointed to him at the revocation hearing. Therefore, the time-bar cannot be imposed upon petitioner because this is not a criminal matter, and the claim is based upon new reliable evidence."

Petitioner's theory is incorrect. The limitations period set forth in §2244(d) does indeed apply to *habeas corpus* petitions attacking state parole revocation proceedings. See <u>Williams v. Johnson</u>, 253 F.3d 706 (5th Cir. 2001); Compare also, <u>Alexander v. Johnson</u>, 163 F.3d 906, 907 at fn. 1 (5th Cir. 1998).

Petitioner elsewhere implied that he later discovered "new reliable evidence" [doc. 7, p. 3] but, as noted above, he offers no explanation of this claim and provides no such new evidence for consideraton.

In any event, since petitioner did not challenge his underlying conviction, which we now know occurred on August 20, 1990, the limitations period for any attack on the revocation of his parole began on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." See 28 U.S.C.§2244(d)(1)(D). See <u>Heiser v. Johnson</u>, 263 F.3d 162, 2001 WL 803542 (5th Cir.2001) (Table, No. 00-14008) (unpublished). In <u>Heiser</u>, the Fifth Circuit considered the interplay of §2244(d) to parole revocation proceedings and provided the following analysis:

> With the implementation of the AEDPA on April 24, 1996, a state prisoner has one year to petition a federal district court for a writ of *habeas corpus*. 28 U.S.C. § 2244 states in pertinent part:
>
> (d) (1) A 1-year period of limitation shall apply to an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered

through the exercise of due diligence.

To decide when the statute of limitation on Heiser's claim began to accrue, we must determine under which of those provisions his claim falls.

Neither side contends that the filing of Heiser's claim was delayed by any State action or that any new constitutional right has been defined by the Supreme Court, so our review is narrowed to subsections (d)(1)(A) and (d)(1)(D). Subsection (d)(1)(A) pertains to direct review of 'the judgment.' Specifically, what is being reviewed herein is the 'judgment' of the parole panel to revoke Heiser's mandatory supervision and return him to state custody, with the resultant loss of all accrued good time credits... The term 'judgment' contained in (d)(1)(A), however, does not stand alone. It derives directly from the previous sentence in (d)(1) stating 'a person in custody pursuant to the judgment of a State court.' Clearly the parole panel is not a court; thus, its decision cannot be deemed a judgment under the terms of (d)(1)(A).

We are left, then, with subsection (d)(1)(D) and when Heiser was, or with due diligence should have been, aware of the predicate facts of his *habeas* claims. Johnson contends that Heiser was aware of the potential for revocation of his mandatory supervision and resultant loss of good conduct credits well before his revocation hearing, but in any event the very latest he could or should have been aware of those facts was when the parole board revoked his mandatory supervision...

<u>Heiser knew of the facts surrounding the revocation of his mandatory supervision and the forfeiture of his accrued good conduct credits at least by the date his supervision was revoked on February 11, 1998. Accordingly, we conclude that under § 2244(d)(1)(D) the statute of limitations on Heiser's claim began running on that date.</u>

Heiser, 2001 WL 803542, at. *2 (emphasis supplied, footnotes omitted)

Thus, as noted in the original Report and Recommendation, petitioner must have discovered the factual predicate of his

claim on June 3, 2004, the date of the parole revocation hearing, the date that counsel was allegedly denied to him, and, the date that his parole was revoked and he was re-committed to LDOC's physical custody. As noted in the original Report and Recommendation, if the limitations period began on June 3, 2004, the one-year period of limitations expired one-year later on or about June 3, 2005.

Clearly, more than one-year elapsed between the date of petitioner's parole revocation hearing and the date he filed his federal petition for writ of *habeas corpus*.

Petitioner's pleadings do not suggest that he is entitled to rely on either statutory or equitable tolling. With regard to statutory tolling, 28 U.S.C. §2244(d)(2) provides, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." By his own admission [see doc. 1-1, paragraph 10] petitioner did not seek either direct or collateral review of the parole revocation.

While he claims to have applied for a re-hearing in September 2007, by that time the limitations period had already long expired and could not be revived by the filing of that application even if it is considered a valid post-conviction or

collateral attack.[2]

As noted in the original Report and Recommendation, the Fifth Circuit has held that the AEDPA's one-year statute of limitations can, in rare and exceptional circumstances, be equitably tolled. See Davis v. Johnson, 158 F.3d 806, 811 (5th Cir.1998). However, "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir.1999) (quotation marks omitted). The pleadings and exhibits submitted by the petitioner suggest nothing to support equitable tolling of the statute of limitations. The petitioner was not actively misled by the state of Louisiana; nor was he prevented in some extraordinary way from asserting his rights by timely filing his *habeas* claims.

Thus, as noted previously, the petition is time-barred by the provisions of 28 U.S.C. § 2244(d)(1)(A) and equitable

---

[2] In his original objection, petitioner admitted "... that his parole was violated on June 3, 2004..." He further argued, "... and on September 12, 2007, scheduled for review by the Parole Board ... being denied has tolled the one-year statute of limitations..." In support of this cryptic statement petitioner cited "McCall v. Kelly D. Ward." The undersigned has discovered an unpublished per curiam of the Fifth Circuit entitled McCall v. Ward, 202 F.3d 264, 1999 WL 1131669 (5th Cir. 1999). However that case offers no support for petitioner's tolling claim. In McCall, the Fifth Circuit noted that a state collateral attack ultimately deemed abusive by the State courts, could still serve to toll the AEDPA limitations period pursuant to the provisions of §2244(d)(2). Nothing of record suggests, that some valid direct or collateral attack of the revocation proceeding was pending between the June 2004 revocation hearing and September 2007, the date petitioner filed for rehearing.

tolling does not apply.

## 2. Exhaustion of State Court Remedies

28 U.S.C. §2254 states, in pertinent part:

(b)(1) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court <u>shall not be granted unless it appears that</u>

(A) <u>the applicant has exhausted the remedies available in the courts of the State</u>; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

This statute codified the jurisprudential rule of exhaustion which requires that state courts be given the initial opportunity to address and, if necessary, correct alleged deprivations of federal constitutional rights in state cases. <u>Castille v. Peoples</u>, 489 U.S. 346, 349, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989). The doctrine serves "to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." <u>Rose v. Lundy</u>, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982). Federal and state courts are equally obliged to guard and protect rights secured by the Constitution, therefore, it would be inappropriate for a federal district court to upset a state court conviction without first giving the state court the opportunity to correct the alleged constitutional violation.

To have exhausted state remedies, a federal *habeas* petitioner must have fairly presented the substance of his federal constitutional claims to the state courts. Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir.1997), *cert. denied*, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998). Exhaustion also requires that any federal constitutional claim presented to the state courts be supported by the same factual allegations and legal theories upon which the petitioner bases his federal claims. Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).

In addition, a federal *habeas* petitioner must "fairly present" his federal constitutional claim to the highest state court. Skelton v. Whitley, 950 F.2d 1037, 1041 (5th Cir.), *cert. denied sub nom.* Skelton v. Smith, 506 U.S. 833, 113 S.Ct. 102, 121 L.Ed.2d 61 (1992); Richardson v. Procunier, 762 F.2d 429, 431 (5th Cir.1985); Carter v. Estelle, 677 F.2d 427, 443 (5th Cir.1982), *cert. denied*, 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983). In Louisiana, the highest state court is the Louisiana Supreme Court.

Following the revocation of his parole, state court remedies were available to the petitioner. Pursuant to the provisions of La. R.S.15:574.11(A), "No prisoner or parolee shall have a right of appeal from a decision of the board regarding release or deferment of release on parole, the imposition or modification of

authorized conditions of parole, the termination or restoration of parole supervision or discharge from parole before the end of the parole period, or the revocation or reconsideration of revocation of parole, <u>except for the denial of a revocation hearing under R.S. 15:574.9</u>."

Subsection B of the same statute provides, "Venue in any action in which an individual committed to the Department of Public Safety and Corrections contests any action of the board shall be in the <u>parish of East Baton Rouge</u>. Venue in a suit contesting the actions of the board shall be controlled by this Part and R.S. 15:571.15 and not the Code of Criminal Procedure, Title XXXI-A, Post Conviction Relief, or Title IX, Habeas Corpus, regardless of the captioned pleadings stating the contrary."

Petitioner has throughout these proceedings maintained that the revocation of his parole was in violation of the provisions of La. R.S.574.9(A). Indeed, that is the statute that provides for the appointment of counsel in certain parole revocation hearings. In that regard, La. R.S. 15:571.11(C) provides, "<u>The district court shall have appellate jurisdiction over pleadings alleging a violation of R.S. 15:574.9</u>. The review shall be conducted by the court without a jury and shall be confined to the revocation record... The court may affirm the revocation decision of the Board of Parole or reverse and remand the case for further revocation proceedings. <u>An aggrieved party may appeal</u>

<u>a final judgment of the district court to the appropriate court of appeal</u>."

While this exact provision may not have existed at the time of petitioner's probation revocation (it appears that some of the language was added by the amendments occasioned by the passage of Acts 2005, No. 460, §1), however, the prior version of the law, which existed at the time of petitioner's parole revocation, provided for judicial review of claims, such as petitioners, which contested the revocation of parole as violative of the provisions of La. R.S.15:574.9. Thus, even under prior versions of this statute, petitioner was statutorily authorized to seek review of the Parole Board's decision by filing a petition for review in Louisiana's Nineteenth Judicial District Court, the Judicial District embracing East Baton Rouge Parish. Had such review proved unsuccessful, he was authorized to seek further review in Louisiana's First Circuit Court of Appeal. See <u>Madison v. Ward</u>, 2000-2842 (La. 1 Cir. 7/3/2002), 825 So.2d 1245, 1251, footnote 7. (Therein the court noted that the prior version of R.S.15:574.11 permitted judicial review of Parole Board actions which were alleged to be in violation of 15:574.9; and that such review could be accomplished as provided in the amended version of the statute – an appeal to the Nineteenth Judicial District Court and then to the First Circuit Court of Appeals if necessary. Or, as stated by the Court, "Pleadings alleging a

denial of a revocation hearing under La. R.S.15:574.9, however styled, should be reviewed on the merits by the (19th Judicial) district court acting in its appellate capacity; the district court's affirmation, modification, or reversal of the board's action would likewise be reviewable under this [First Circuit] court's supervisory jurisdiction.") See also <u>Bertrand v. Louisiana Parole Board</u>, 2006-0871 (La. App. 1 Cir. 3/28/2007), 960 So.2d 979 which discusses the current version of the statute.

In other words, when petitioner's parole was revoked, he had the absolute right to seek judicial review of alleged violations of 15:574.9 by filing a petition for review in Louisiana's Nineteenth Judicial District Court, and thereafter, if necessary, he had the right to seek review of the District Court's decision in the Louisiana First Circuit Court of Appeals. Under Louisiana's Constitution, petitioner also could invoke the general supervisory jurisdiction of Louisiana's Supreme Court should review of the First Circuit's judgment be deemed necessary and appropriate. See LSA Const. Art. 5, §5(A).

Thus, following the revocation of his parole, a specific series of state court remedies were available to the petitioner: First, petitioner could have sought judicial review of the actions of the Parole Board by filing a petition for review in the Nineteenth Judicial District Court; Second, had relief been denied, he could have sought review of the district court's

decision in the First Circuit Court of Appeals; and Finally, had relief been denied, he could have invoked the general supervisory jurisdiction of the Louisiana Supreme Court.

Under the exhaustion doctrine, petitioner was obliged to seek review in a procedurally correct manner in the Louisiana Supreme Court prior to seeking federal *habeas corpus* relief. The pleadings and exhibits suggest that petitioner did not seek review in the Louisiana Courts, and, further, a review of the presumptively reliable published jurisprudence of the State confirms that no writ actions were filed in the Louisiana Supreme Court involving this petitioner.[3]

In other words, petitioner did not exhaust his federal claims by presenting those claims to the Louisiana Supreme Court in a procedurally correct manner.  His right to counsel claim therefore remains unexhausted.

### 3. *Technical Exhaustion and Procedural Default*

It appears, however, that this claim while unexhausted, is "technically" exhausted since it is unlikely that petitioner could return to the Louisiana courts to re-litigate the claim. La. R.S.15:574.11(D) provides a 90 peremptive period for seeking judicial review of parole revocations. Petitioner's right to seek

---

[3] See Westlaw® database, Louisiana Cases at
https://web2.westlaw.com/search/default.wl?rs=WLW8.01&eq=Welcome%2fLouisiana&a
ction=Search&fn=_top&sv=Split&method=TNC&query=ti(harold+%2b+simmons)&tc=1001
&tf=770&effdate=1%2f1%2f0001+12%3a00%3a00+AM&db=LA-CS&utid=%7b09846306-2B8B-4E
3F-B643-7E7D53236226%7d&vr=2.0&rp=%2fsearch%2fdefault.wl&mt=Louisiana

judicial review of the revocation of his parole has long since prescribed and any attempt to raise the claim at this point in time would probably be futile.

Thus, petitioner's "technically" exhausted claim must now be considered procedurally defaulted. The procedural default doctrine bars federal *habeas corpus* review if the state courts would <u>now</u> refuse to address a *habeas* petitioner's unexhausted federal claim because litigation of those claims would be barred by state procedural rules.

Federal *habeas* review of this "technically" exhausted but now procedurally defaulted claim is barred "...unless the prisoner can demonstrate cause for the default and actual prejudice as result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman v. Thompson</u>, 501 U.S. 722, 750-51, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

### A. *Cause and prejudice*

In <u>Murray v. Carrier</u>, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), the Supreme Court explained that "cause" in the context of a procedural default refers to an impediment external to the defense: "[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's

procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard." Murray v. Carrier, 477 U.S. at 488, 106 S.Ct. at 2645 (internal citations omitted).

Clearly, the cause of the default herein identified was petitioner's failure to properly advance his federal constitutional claim in a systematic manner to the Louisiana Supreme Court. This failure was clearly not "... an impediment external to the defense..." Thus, petitioner cannot show "cause" for his default.

Further, if a *habeas* petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice. Saahir v. Collins, 956 F.2d 115, 118 (5th Cir.1992).

### B. Miscarriage of Justice

Since petitioner has failed to show "cause and prejudice" for his default, federal review of the "technically exhausted" claims may therefore be had only if necessary to avoid a fundamental miscarriage of justice. Coleman, 501 U.S. at 750, 111 S.Ct. 2546

In order for a *habeas corpus* petitioner to avoid a procedural default by showing a fundamental miscarriage of

justice, the petitioner must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); Glover v. Cain, 128 F.3d 900, 904 (5th Cir. 1997). To support such an exception, the petitioner must allege that as a factual matter he did not commit the crime. Corwin v. Johnson, 150 F.3d 467, 473 (5 Cir.1998); Ward v. Cain, 53 F.3d 106, 108 (5th Cir.1995). Thus, the petitioner must make a "colorable showing of factual innocence." Callins v. Johnson, 89 F.3d 210, 213 (5th Cir.), cert. denied, 519 U.S. 1017, 117 S.Ct. 530, 136 L.Ed.2d 416 (1996) quoting McClesky v. Zant, 499 U.S. 467, 495, 114 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1993). Petitioner has not shown as a factual matter that the Parole Board's revocation of parole was based on a factual error. He merely claims that his ignorance of the conditions of parole resulted in the revocation complained of on "technical grounds." Thus, petitioner has not shown that he will suffer a fundamental miscarriage of justice from this court's failure to consider his current *habeas corpus* claim. Accordingly, petitioner cannot avoid procedural default of these claims on the grounds of actual innocence.[4]

---

[4] Of course, petitioner may again object to this Report and Recommendation. In the event that he does object, he is encouraged to provide argument and evidence of "cause and prejudice" and "miscarriage of justice." Additionally, he is also encouraged to submit argument and evidence to establish that he either exhausted his federal claims, or that there were no state court remedies available, or that he still has the right to avail

## 4. Conclusion and Recommendation

Accordingly,

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE** because petitioner's claims are barred by the one-year limitation period codified at 28 U.S.C. §2244(d);

or, in the alternative,

**IT IS RECOMMENDED** that the petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE** pursuant to Rule 4 of the Rules Governing Section 2254 Cases since petitioner's claim was not exhausted, and, although it is now technically exhausted, it must be dismissed as procedurally defaulted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date**

---

himself of state court remedies.

of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

     THUS DONE AND SIGNED in Chambers at Alexandria, Louisiana, this _____ day of _____, 2008.

                                 JAMES D. KIRK
                                 UNITED STATES MAGISTRATE JUDGE